# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **DEBORAH J. HOLLEY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 1:16-CV-01272** |
| | } | |
| **NANCY BERRYHILL,** | } | |
| **Acting Commissioner of the** | } | |
| **Social Security Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

Pursuant to 42 U.S.C. § 405(g), plaintiff Deborah Holley seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Ms. Holley's claim for a period of disability and disability insurance benefits. After careful review, the Court affirms the Commissioner's decision.[1]

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. (*See* https://www.ssa.gov/agency/commissioner.html). Therefore, the Court asks the Clerk to please substitute Ms. Berryhill for Carolyn W. Colvin as the defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

## I.  PROCEDURAL HISTORY

Ms. Holley applied for a period of disability and disability insurance benefits on August 23, 2013.  (Doc. 7-4, p. 2).  Ms. Holley initially alleged that her disability began August 23, 2013, but she later amended her alleged disability onset date to November 15, 2013.  (Doc. 7-3, pp. 21, 49; Doc. 7-4, p. 2).  The Commissioner initially denied Ms. Holley's claim on April 25, 2014.  (Doc. 7-5, pp. 2-5).  Ms. Holley requested a hearing before an Administrative Law Judge (ALJ).  (Doc. 7-5, p. 8).  Subsequently, the ALJ issued an unfavorable decision on January 26, 2016.  (Doc. 7-3, pp. 18-38).  On June 3, 2016, the Appeals Council declined Ms. Holley's request for review (Doc. 7-3, p. 1), making the Commissioner's decision final and a proper candidate for this Court's judicial review.  *See* 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'"  *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings.  "Substantial evidence is more than a

scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In evaluating the administrative record, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If substantial evidence supports the ALJ's factual findings, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.   SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or

combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Holley has not engaged in substantial gainful activity since November 15, 2013, the alleged onset date. (Doc. 7-3, p. 23). The ALJ determined that Ms. Holley suffers from the following severe impairments: Meniere's disease; bilateral sensory hearing loss; history of migraines; Barrett's syndrome with esophagitis; osteoarthritis, not specified, status post surgeries to right foot; mild lumbar scoliosis; obstructive sleep apnea; major depressive disorder, recurrent, moderate; and anxiety disorder, not otherwise specified. (Doc. 7-3, p. 23). The ALJ also found that Ms. Holley has the following non-severe impairments: hypertension, hyperlipidemia, diabetes mellitus, and coronary artery disease. (Doc. 7-3, p. 24). Based on a review of the medical evidence, the ALJ concluded that Ms. Holley does not have an impairment or a combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 7-3, p. 25).

In light of Ms. Holley's impairments, the ALJ evaluated Ms. Holley's residual functional capacity. (Doc. 7-3, p. 29). The ALJ determined that Ms. Holley has the RFC to perform:

> medium work as defined in 20 CFR 404.1567(c) except she can only frequently use right foot controls. She can frequently climb ramps and stairs, but never climb ladders and scaffolds. She can frequently balance and stoop, but never kneel, crouch, or crawl. The claimant would require the occasional use of a single-handed walking device to ambulate as well as balance. She can never be exposed to unprotected heights, dangerous tools, dangerous machinery, or hazardous processes. She can never operate commercial motor vehicles. The claimant can tolerate moderate noise levels in the workplace. She would be limited to simple tasks and simple work-related decisions. She would be unable to perform at production-rate pace but could do goal-oriented work. The claimant would be able to accept constructive non-confrontational criticism and work in small group settings. She would be able to accept changes in a work place setting if introduced gradually and infrequently. In addition to normal breaks, the claimant would be off-task approximately five percent of an eight-hour workday, in non-consecutive minutes.

(Doc. 7-3, p. 29).

Based on Ms. Holley's RFC, the ALJ concluded that Ms. Holley is not able to perform her past relevant work as an apartment house manager, home health aide, and convenience store manager. (Doc. 7-3, pp. 35-36). Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Ms. Holley can perform, including checker, marker, and chick grader. (Doc. 7-3, p. 37). Accordingly, the ALJ determined that Ms. Holley has not been under a disability within the meaning of the Social Security Act. (Doc. 7-3, p. 37).

## IV. ANALYSIS

Ms. Holley argues that she is entitled to relief from the ALJ's decision because the ALJ failed to properly evaluate her subjective complaints of pain consistent with the Eleventh Circuit's three-part pain standard. (Doc. 11, p. 4). "To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing '(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.'" *Zuba-Ingram v. Commissioner of Social Sec.*, 600 Fed. Appx. 650, 656 (11th Cir. (2015) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam)). A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).

If the ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225. "While an adequate credibility finding need not cite particular phrases or formulations[,] broad findings that a claimant lacked credibility . . . are not enough. . . ." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam); *see* SSR 96-7P, 1996 WL 374186 at *2 ("The determination or decision must contain

specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").[2]

Ms. Holley alleges that she suffers from disabling mental, emotional, and physical pain. (Doc. 11, p. 4). At her administrative hearing, Ms. Holley stated that, due to Meniere's disease, she has "drop attacks," vertigo, and dizziness. (Doc. 7-3, pp. 66, 72).[3] Ms. Holley testified that "drop attacks" twice have caused her to fall down stairs while at work. (Doc. 7-3, p. 72). She testified that

---

[2] On March 28, 2016, SSR 16-3p superseded SSR 96-7p, the previous ruling concerning subjective complaints about pain. 2016 WL 1237954 at *1. SSR 16-3p "provides guidance about how [the Social Security Administration] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, 2016 WL 1119029 at *1. SSR-16-3p eliminates the term "credibility" from Social Security Administration policy and stresses that when evaluating a claimant's symptoms, an ALJ must "not assess an individual's overall character or truthfulness" but instead must "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms." SSR 16-3p, 2016 WL 1119029 at *1, *10. SSR 16-3p does not apply retroactively to administrative decisions issued before March 28, 2016. *See Hargress v. Comm'r of Soc. Sec.*, 874 F.3d 1284, 1290 (11th Cir. 2017); *see also Green v. Comm'r of Soc. Sec.*, 695 Fed. Appx. 516, 521 (11th Cir. 2017). Here, the ALJ issued his decision on Ms. Holley's application on January 26, 2016. The Appeals Council declined review on June 3, 2016 (Doc. 7-3, pp. 1, 38) which made the ALJ's opinion the Commissioner's final decision. *See Sims. v. Apfel*, 530 U.S. 103, 106-07 (2000) ("SSA regulations provide that, if the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision. But if, as here, the Council denies the request for review, the ALJ's opinion becomes the final decision."). Assuming without deciding that SSR 16-3p applies in this case, remand is not warranted because as explained below, the ALJ's analysis of Ms. Holley's subjective complaints is consistent with SSR 16-3p.

[3] Meniere's disease is "a disorder of the inner ear that causes severe dizziness (vertigo), ringing in the ears (tinnitus), hearing loss, and a feeling of fullness or congestion in the ear." National Institutes of Health, National Institute on Deafness and Other Communication Disorders (NIDCD), Meniere's Disease, *available at* https://www.nidcd.nih.gov/health/menieres-disease.

Meniere's disease causes her "a lot more problems. . . ." (Doc. 7-3, p. 69). Specifically, Ms. Holley testified that the combined effects of migraine headaches and Meniere's ear prevented her from showing apartments, which forced her to resign from her apartment manager job in November 2013. (Doc. 7-3, pp. 72-73). Ms. Holley testified that she gets Meniere's ear "quite often," that she frequently cannot bear to smell her own skin, and that her nausea medication puts her to sleep. (Doc. 7-3, p. 69). She stated that she rarely drives due to her Meniere's disease; she relies on her husband for most of her transportation. (Doc. 7-3, p. 58). Ms. Holley testified that she "ran into the ditch two times" as a result of Meniere's attacks and that she only drives once a week. (Doc. 7-3, p. 57-58).

Ms. Holley testified that her right foot "feels like it's broke in two." (Doc. 7-3, p. 71). She testified that she feels like she has "pins and needles in [her] legs," and that they "will feel cold, like it's frostbit. . . ." (Doc. 7-3, p. 69).

Ms. Holley stated that she lost nearly 50 pounds between 2013 and 2015, and no doctor has been able to identify a cause for her weight-loss. (Doc. 7-3, p. 54). Ms. Holley testified that she occasionally cooks breakfast and dinner, that she occasionally grocery shops, that she occasionally attends to household chores, that she occasionally attends her step-daughter's cheerleading events, that she attends church every Sunday, and that she visits her mother "through the woods." (Doc. 7-

3, p. 64, 66, 67). She stated that the frequency of these daily activities differs "according to how I feel." (Doc. 7-3, p. 64).

Ms. Holley testified that "most of the time [she] lay[s] on the couch" four to five hours per day. (Doc. 7-3, pp. 64, 70). She testified that she spends two to three hours per day sleeping. (Doc. 7-3, p. 70). Specifically, Ms. Holley said that "all [of a] sudden I have to just . . . go to sleep. I don't know if it's from the sleep apnea or what it is." (Doc. 7-3, p. 70). She described these urges to sleep as "overwhelming." (Doc. 7-3, p. 70).

Ms. Holley testified that she occasionally leaves the house but that she "never want[s] to get out" due to her depression. (Doc. 7-3, p. 67). She testified that most of her social outings require prompting from her husband. (Doc. 7-3, p. 67). According to Ms. Holley, she feels like she is in a "black hole" and does not want to talk to anyone because she thinks that "they'll see that black hole inside [her]." (Doc. 7-3, p. 58). Ms. Holley stated that her depression and anxiety medications and therapy have been largely unhelpful. (Doc. 7-3, p. 60).

Ms. Holley testified that she has trouble focusing, that her concentration problems prevent her from reading, and that she "used to read books all the time." (Doc. 7-3, p. 65). Ms. Holley cannot focus long enough to concentrate on a recipe. (Doc. 7-3, p. 65). According to Ms. Holley, her mental issues created challenges at her job as an apartment manager. (Doc. 7-3, p. 72). Specifically, she testified that

she could not figure out what she was "supposed to do with the e-mails." (Doc. 7-3, p. 72).

The ALJ accurately summarized Ms. Holley's testimony concerning her pain. (Doc. 7-3, pp. 29-30). The ALJ explained that Ms. Holley's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Doc. 7-3, p. 30).[4] Substantial evidence supports the ALJ's credibility determination.

First, the ALJ determined that, "[a]lthough [Ms. Holley] had a number of chronic physical impairments, objective medical findings did not support the degree of physical limitation that [Ms. Holley] alleged." (Doc. 7-3, p. 34). An ALJ may consider objective medical evidence when evaluating a claimant's subjective pain testimony. 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.").

_____

[4] Although the ALJ used the term "credible," the ALJ did not base his findings on evidence in the record that was unrelated to Ms. Holley's impairments, and he did not assess whether Ms. Holley generally was a truthful person. Instead, consistent with SSR 16-3p, the ALJ reviewed Ms. Holley's testimony about her pain, the objective medical evidence in the record as a whole, and Ms. Holley's activities of daily living. (Doc. 7-3, pp. 29-35). Ms. Holley has not argued that SSR 16-3p applies to her case, but even if it does, the ALJ's assessment of Ms. Holley's subjective testimony is consistent with SSR 16-3p.

Regarding Ms. Holley's Meniere's disease, the ALJ reviewed the results of Ms. Holley's diagnostic testing and treatment notes. (Doc. 7-3, p. 30; *see* Doc. 7-9, pp. 73-77, 79, 83-87; Doc. 7-10, p. 32). Ms. Holley was diagnosed with Meniere's disease in February 2013. (Doc. 7-10, p. 32). The diagnosis followed a syncopal episode. (Doc. 7-3, p. 30). The ALJ noted that following the Meniere's diagnosis, diagnostic testing resulted in unremarkable findings, and Ms. Holley was discharged in stable condition. (Doc.7-3, p. 30; *see* Doc. 7-10, p. 32). In August 2014, October 2014, and September 2015, Ms. Holley received treatment for symptoms relating to Meniere's disease, including dizziness, ringing in her ears, headaches, and nausea. (Doc. 7-3, p. 30; *see* Doc. 7-13, p. 30, 59; Doc. 7-14, p. 7; Doc. 7-15, p. 24).

The ALJ noted that Ms. Holley's diagnostic testing between 2013 and 2015 "showed some abnormalities, but did not substantiate the alleged degree of limitation caused by Meniere's disease." (Doc. 7-3, p. 30). Specifically, during an October 2013 medical visit, Ms. Holley received a diagnosis of Meniere's Disease in her right ear and benign paroxysmal vertigo, but no limitations were imposed. (Doc. 7-3, p. 30; *see* Doc. 7-9, p. 77). During her August 2014 medical visit, Ms. Holley received a steroid shot in her right ear as treatment for dizziness, and another injection procedure was ordered six weeks later. (Doc. 7-3, p. 30; *see* Doc. 7-13, p. 55). During Ms. Holley's September 2015 visit, she received a diagnosis

of other migraine without status migrainosus and allergic rhinitis due to pollen. (Doc. 7-3, p. 30; Doc. 7-15, p. 27). The results of a physical examination and a head CT were normal. (Doc. 7-3, p. 30; *see* Doc. 7-15, pp. 26, 29). The ALJ noted that Ms. Holley's diagnostic test results did not explain the existence of vertigo, and nothing in Ms. Holley's medical tests substantiated the alleged severity of vertigo and dizziness. (Doc. 7-3, p. 31). To the contrary, a March 2014 CT scan showed that Ms. Holley's temporal bones and both the middle and inner ear structures were normal, and the CT scan results showed "[n]o definite abnormality to explain vertigo." (Doc. 7-9, p. 83).

Regarding Ms. Holley's allegations of tinnitus and hearing loss, the ALJ noted that February 2013 audiogram tests that showed slight, low frequency sensorineural hearing loss in the right ear, but a subsequent audiogram on October 11, 2013 showed normal hearing in both ears. On that date, Ms. Holley's word recognition was 100 percent. (Doc. 7-3, p. 31; *see* Doc. 7-9, p. 73). Additionally, although Ms. Holley had one positive electrocochleography in the right ear, a subsequent electronystagmography was normal, and a vestibular evoked myogenic potential (VEMP) test also produced normal findings. (Doc. 7-3, p. 31; *see* Doc. 7-9, pp. 74, 79, 81, 82).

Even though there is some objective medical evidence that supports Ms. Holley's assertion that she suffered side effects as a result of Meniere's disease, the

presence of symptoms, standing alone, does not warrant a finding of disability. The key issue is whether the objective medical evidence supports Ms. Holley's testimony about the effects of her physical pain on her ability to work. *Davis v. Barnhart*, 153 Fed. Appx. 569, 572 (11th Cir. 1987) (citing 42 U.S.C. § 423(d)(1)(A)) ("[D]isability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of the impairment itself."). The ALJ's conclusions regarding the limiting effects of Ms. Holley's Meniere's disease are supported by substantial evidence.

Regarding Ms. Holley's foot and musculoskeletal pain—osteoarthritis and mild lumbar scoliosis—the ALJ noted that Ms. Holley had had surgery but that her musculoskeletal findings were "generally unremarkable." (Doc. 7-3, p. 31). Records from her March 2015 right foot surgery indicate that Ms. Holley responded well to the procedure. (Doc. 7-14, p. 39). The ALJ noted that during a May 2015 examination, Ms. Holley could "ambulate with a normal gait." She displayed "sensation, strength, and coordination within normal limits," and she had "no inflammation of the ankles or feet, and no metatarsalgia or heel tenderness of the right foot." (Doc. 7-3, pp. 31-32; Doc. 7-14, p. 82). The ALJ noted that Ms. Holley received limited treatment for arthritic pain, failed to actively seek out treatment for other musculoskeletal issues, and, at the time of her administrative hearing, did not rely on mechanical assistance while walking. (Doc. 7-3, p. 35).

As a result, Ms. Holley's description of the severity of her foot and joint pain is contradicted by the record.

The ALJ rejected Ms. Holley's subjective testimony concerning her mental impairments because the ALJ determined that "the record as a whole does not support the degree of mental limitation alleged by the claimant." (Doc. 7-3, p. 35). The ALJ concluded that despite Ms. Holley's treatment for anxiety and depression from 2012-2014, "her overall mental condition remained generally stable." (Doc. 7-3, p. 32; *see* Doc. 7-12, p. 38; Doc. 7-14, p. 36; Doc. 7-15, p. 41). The ALJ noted that treatment notes indicated that Ms. Holley's condition improved through 2013 and 2014. (Doc. 7-3, p. 33; *see* Doc. 7-12, p. 38; Doc. 7-14, pp. 36, 74).[5] The ALJ explained that during an April 2014 consultative examination, Dr. Robert Kline "did not observe the presence of a psychiatric disorder" and "did not substantiate the degree of mental limitation alleged by the claimant." (Doc. 7-3, p. 33; *see* Doc. 7-14, pp. 74-75).

Dr. Kline summarized his mental status examination findings as follows:

> There was nothing unusual about [Ms. Holley's] physical appearance or motor activity. Her attitude was one of cooperation. Characteristics of her speech indicated that her thought and conversation were normal and she could carry on a normal conversation. Her mood was euthymic. The range of her affect was normal. Her affect was appropriate to the content of her thought and

---

[5] Ms. Holley received inpatient psychiatric treatment in December 2012 after expressing suicidal thoughts. (Doc. 7-9, p. 49). Treatment notes from December 2013 and January 2014, however, indicate that Ms. Holley's suicidal thoughts had subsided. (Doc. 7-12, p. 38).

conversation. There was no liable affect noted. She displayed no signs of anxiousness such as restlessness, tremor, or sweaty palms.

(Doc. 7-14, p. 74). In addition, Dr. Kline explained that Ms. Holley:

did not show any loose associations or tangential thinking. There was no confusion noted. [Ms. Holley's] speech did not appear to be pressured, mumbled, or slurred. There were no indications of hallucinations, delusions, ideas of reference, phobias, obsessions, or compulsions. She did not show any indecision or grandiosity. She did not express any helplessness or hopelessness. [Ms. Holley] denied suicidal and homicidal ideation.

(Doc. 7-14, p. 75). Dr. Kline also found that Ms. Holley's "insight into herself and into social situations was fair." (Doc. 7-14, p. 75). Dr. Kline concluded that Ms. Holley's mental health "prognosis over the next six to twelve months was fair." (Doc. 7-14, p. 75).

Though Ms. Holley complained that her anxiety and depression medications were ineffective (Doc. 7-3, pp. 59-60), her medical records contradict her testimony. Ms. Holley has a long history of treatment for anxiety and depression, and she has taken a number of medications to treat her symptoms, including Cymbalta, Klonopin, Abilify, and Zoloft. (Doc. 7-9, p. 27; Doc. 7-9, p. 49; Doc. 7-12, p. 35). The ALJ noted that Ms. Holley's depression worsened after discontinuing Abilify in February 2012. (Doc. 7-3, p. 32; *see* Doc. 7-11, p. 36). But December 2013 treatment notes from Cheaha Medical Center indicate that Ms. Holley's major depressive disorder was in full remission, and Ms. Holley's depression and anxiety had "improved significantly over the past year with

medication." (Doc. 7-12, p. 38). The ALJ noted that Ms. Holley continued to have health issues and problems with poor coping skills, but December 2014 treatment notes indicated Ms. Holley's continued mental health improvement. (Doc. 7-3, p. 33; Doc. 7-14, p. 36). Finally, the ALJ noted that an August 2015 mental status examination "gave abnormal findings for mood and perception, but normal findings for behavior, judgment, memory, attention, and thought content." (Doc. 7-3, p. 33; *see* Doc. 7-15, p. 41).[6]

The ALJ gave little credit to Ms. Holley's testimony about the severity of her concentration and memory problems. The ALJ noted that Dr. Kline's April 2014 psychological evaluation indicated that Ms. Holley's "ability to understand, carry out, and remember instructions; sustain concentration and persistence in work-related activities at a reasonable pace; maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public; and deal with normal pressures in a competitive work setting, from a mental health perspective, seems to be fair." (Doc. 7-3, p. 33; *see* Doc. 7-14, p. 75). Dr. Kline opined that Ms. Holley "seems to have, at most, a mild restriction of activities, a mild constriction of interests, and no restriction in her ability to relate to others. She has adequate ability to function independently." (Doc. 7-14, p. 75).

---

[6] August 2015 treatment notes indicate that at the time, Ms. Holley was taking psychotropic drugs Klonopin and Trazadone. (Doc. 7-15, p. 41). Those same treatment notes recommended that Ms. Holley's treatment "continue [its] present course." (Doc. 7-15, p. 41).

The ALJ provided specific reasons supported by the record for rejecting Ms. Holley's subjective testimony about her mental and physical impairments. Therefore, substantial evidence supports the ALJ's reasons for rejecting Ms. Holley's subjective complaints of pain. *See, e.g., Duval v. Comm'r of Soc. Sec.*, 628 Fed. Appx. 703, 712 (11th Cir. 2015) ("The ALJ explained that Mr. Duval's testimony was not credible to the extent it was unsupported by the objective medical evidence and then discussed at length why similar opinions from Mr. Duval's treating medical providers were unsupported by the record. From this discussion, we can clearly infer what testimony from Mr. Duval the ALJ found lacking in credibility and why it was discredited."); *Eckert v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 784, 791 (11th Cir. 2005) ("[T]he credible medical evidence, as found by the ALJ, did not confirm the severity of the alleged pain and the objectively determined medical condition was not of such a severity that it can reasonably be expected to give rise to the alleged pain.").

Ms. Holley argues that the ALJ improperly relied on her daily activities in evaluating her subjective pain testimony. (Doc. 11 pp. 10-11). The Eleventh Circuit has stated that "participation in everyday activities of short duration" does not necessarily disqualify a claimant from disability. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). Still, an ALJ may consider a claimant's daily

activities when making subjective pain testimony assessments. *See* 20 C.F.R. §§ 404.1529(c)(2)(3), 416.929(c)(2)(3).

Here, the ALJ properly examined Ms. Holley's daily activities. For example, the ALJ considered Ms. Holley's testimony that she could attend to personal care, occasionally prepare meals, attend to household chores, attend church, occasionally attend her step-daughter's extra-curricular activities, and shop for groceries. (Doc. 7-3, p. 35). The ALJ also considered Ms. Holley's testimony that she had some trouble with personal care tasks, that she had trouble providing solo care for her step-daughter, and that she tended to isolate herself from others. (Doc. 7-3, p. 27). The ALJ acknowledged that Ms. Holley has "mild restriction" in her daily activities but found that Ms. Holley has engaged in "somewhat normal level[s] of daily activity and interaction." (Doc. 7-3, p. 35).

The ALJ determined that the physical, mental, and social skills needed to perform Ms. Holley's daily activities were the same skills needed to obtain and maintain employment. (Doc. 7-3, p. 35). Accordingly, the ALJ concluded that Ms. Holley's ability to perform the daily activities referenced in the record "diminishes the credibility of her allegations of her functional limitations." (Doc. 7-3, p. 35). Moreover, the ALJ did not make his determination based solely on Ms. Holley's daily activities. (Doc. 7-3, p. 35) ("[P]articipat[ion] in such activities *diminishes* the credibility of her allegations of functional limitations.") (emphasis

added). Rather, the ALJ considered Ms. Holley's daily activities as one part of his overall evaluation of her testimony. *See id.* As a result, the ALJ properly examined Ms. Holley's daily activities, and substantial evidence supports the ALJ's findings. *See Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) ("In sum, the ALJ considered [the claimant's] activities of daily living . . . and concluded that [the claimant's] subjective complaints were inconsistent with his testimony and the medical record.").

In reviewing the available evidence in the record, the Court cannot find that the ALJ was "clearly wrong to discredit" Ms. Holley's testimony. *See Werner v. Comm'r of Soc. Sec.*, 421 Fed. Appx. 935, 939 (11th Cir. 2011). Rather, Ms. Holley's medical evidence, treatment history, and daily activities support the ALJ's evaluation of her subjective complaints of pain. *Foote*, 67 F.3d at 1652 ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."); *Brown v. Comm'r of Soc. Sec.*, 442 Fed. Appx. 507, 513-14 (11th Cir. 2001) (stating that the ALJ sufficiently assessed the credibility of the claimant's testimony where the ALJ thoroughly discussed the claimant's allegations in light of the record as a whole).

The Court is not persuaded by Ms. Holley's argument that the ALJ failed to properly consider the combined effects of her multiple severe impairments. (Doc. 11, pp. 6, 10). When an ALJ finds several impairments, the ALJ must consider the

impairments in combination. The Eleventh Circuit has held that an ALJ satisfies this duty by stating that he considered whether the claimant suffered from any impairment or combination of impairments. *See, e.g.*, *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (reversing a district court's determination that an ALJ did not consider or discuss the cumulative effects of a claimant's impairments where the ALJ explicitly stated that the claimant did not have "an impairment or combination of impairments listed in, or medically equal to one listed" in the regulations); *Hutchinson v. Astrue*, 408 Fed. Appx. 324, 327 (11th Cir. 2011) (finding that the ALJ's statement that the claimant "did not have an 'impairment, individually or in combination' that met one of the listed impairments . . . shows that the ALJ considered the combined effects of [claimant's] impairments during her evaluation"); *see also Robinson v. Comm'r of Social Sec.*, 649 Fed. Appx. 799, 801 (11th Cir. 2016) ("[W]e may conclude that an ALJ properly considered a combination of impairments if the ALJ stated that the [claimant] is not suffering from any impairment or a combination of impairments of sufficient severity.").

In this case, the ALJ explicitly stated that Ms. Holley does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (Doc. 7-3, p. 25). This statement demonstrates that the ALJ considered the combined effects of Ms. Holley's impairments.

## V.     CONCLUSION

For the reasons discussed above, the Court finds that substantial evidence supports the ALJ's decision, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Accordingly, the Court affirms the Commissioner's decision. The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this February 9, 2018.

_Madeline H. Haikala_

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE